*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DETROIT PUBLIC SCHOOLS COMMUNITY
DISTRICT and SCHOOL DISTRICT OF THE CITY
OF DETROIT,

      Plaintiffs-Appellants,

v

DEPARTMENT OF TREASURY and STATE
TREASURER,

      Defendants-Appellees.

FOR PUBLICATION
June 24, 2026
11:57 AM

No. 379565
Court of Claims
LC No. 24-000202-MZ

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

RIORDAN, J.

Plaintiffs, School District of the City of Detroit (DPS) and Detroit Public Schools Community District (the New District) (collectively, the School Districts), appeal by right the order of the trial court granting summary disposition to defendants, Department of Treasury and State Treasurer (collectively, the Treasury), in this dispute involving the interpretation of statutes governing the relationship between the Revised School Code, MCL 380.1 *et seq*., and the statute that created the New District, MCL 380.12b. Before us is the issue of whether DPS's repayments of an emergency loan, bond debt, and revolving-fund debt may be funded by an operating tax.

In 2016, in response to a financial crisis, the New District was established to operate the public school system in Detroit while DPS remained as an entity that existed solely to collect property taxes and pay outstanding debt. This appeal concerns whether DPS may continue to collect an operating tax to repay bond debt and revolving-fund debt after it repays a separate emergency loan provided by the State.[1] This requires deciding whether, and to what extent, the

---

[1] Simply put, the emergency loan was provided by the State to DPS to cover the district's "transitional operating costs," see MCL 141.933(1)(b), the bond debt was issued by DPS to cover various capital improvements, see MCL 380.1351a(1), and the revolving-fund debt was provided

-1-

servicing of debt, independent of the State's emergency loan, is included within the operating costs of a school district under the relevant statutes. As a practical matter, while DPS collects the operating tax, the Treasury pays in full a separate per-pupil allowance to the New District. But, if the New District, the successor of DPS, becomes eligible to collect the operating tax instead of DPS, the Treasury no longer will be responsible to pay in full a per-pupil allowance to the New District.

The trial court determined that repayment of the emergency loan is a school-operating cost, but repayment of DPS's bond debt and revolving-fund debt are not operating costs. Consequently, the trial court held, once the emergency loan is repaid, Michigan law does not authorize DPS to continue to levy an operating tax to repay bond debt and revolving-fund debt. For the reasons set forth, we affirm.

## I. FACTS

Beginning in 2008, a series of emergency managers were appointed to manage DPS. In 2016, DPS had about $3.2 billion in outstanding debt and was suffering an operational crisis. Effective June 21, 2016, the Legislature amended the Revised School Code to establish qualifying school districts.[2] MCL 380.12b(2); 2016 PA 192. If a school district was, or became, a qualifying school district, it was substantively dissolved, MCL 380.12b(1), and its assets were transferred to a community school district, MCL 380.12b(2). Under this statutory scheme, the New District was created and DPS was restructured to exist solely as an entity that collected local taxes and repaid debt. The New District and DPS have the same geographical boundaries. MCL 380.12b(2).

After the New District was created, DPS received a $150 million emergency loan from the State to assist with the costs of transitioning DPS's operations to the New District. DPS also had issued capital-improvement bonds. The bonds were qualified bonds, which meant that the State must provide DPS with a revolving-fund loan if DPS could not fully fund payments on the bonds.[3] DPS is responsible for using the revenues it receives from levying taxes to repay the emergency loan, revolving-fund debt, outstanding bonds, and other liabilities. DPS uses revenue from operating taxes to make payments on the emergency loan and revenue from debt millages to make payments on the revolving-fund debt and outstanding bonds.

Property values in the City of Detroit have increased over the last several years and, as a result, DPS has collected an increased amount of revenue. The increased revenue has allowed

---

by the State to DPS to cover the district's financial shortfall in repaying its bond debt, see MCL 388.1929.

[2] A qualifying school district is a school district that previously was operated as a first-class school district and has fewer than 100,000 pupils. MCL 380.5(9).

[3] A revolving-fund loan is a loan made under the School Bond Qualification, Approval, and Loan Act (SBQALA), MCL 388.921 *et seq.*, which implemented a constitutional amendment to allow the State to make loans to school districts. The Treasury refers to this implementing legislation as "the SBQLP," presumably referring to the title of a program, but we will refer to the act itself by using the initials of the act's official short title as stated in MCL 388.1921.

DPS to repay the emergency loan on an accelerated basis. Aggressive repayment will, apparently, allow DPS to repay the emergency loan about 18 months early.

At the time of the complaint initiating this case, in addition to the emergency loan, DPS owed about $1.3 billion on outstanding bonds and had a revolving-fund debt of about $355 million. Because of DPS's outstanding debt, the New District allegedly was unable to finance capital improvements to school facilities and equipment. If DPS was allowed to continue to use revenues from the operating tax, it would be able to pay the revolving-fund debt in about six years and the outstanding bonds in about eight years. If DPS could not use revenues from the operating tax, it would take DPS until about 2040 to repay the revolving-fund debt and outstanding bonds.

While DPS levies operating taxes, the New District is not permitted to levy operating taxes. See MCL 380.386. Instead, the State must provide the New District with an allowance. See MCL 12.262(7). As the School Districts explain, "for the period in which DPS must levy an operating tax to pay outstanding debt, the State is required to pay the New District's full per pupil foundation allowance exclusively" from a combination of funding methods. But once DPS is no longer authorized to levy operating taxes, the New District would be authorized to do so, and the State would no longer be required to provide the per-pupil foundation allowance.

In 2020, voters within DPS's geographical boundaries voted to allow DPS to renew the operating tax for 11 years.[4] In August 2024, Chief Financial Officer Jeremy Vidito, on behalf of the School Districts, notified Kevin Smith of the Treasury that the emergency loan would be repaid early and sought guidance about how early payment would affect the operating tax collected by DPS. Smith responded that the revolving-fund debt and bond debt were not "operating debt" for which an operating tax could be levied. Smith opined that, once the operating debt, i.e., the emergency loan, was repaid, DPS would no longer have authority to levy an operating tax. The New District would then be able to levy an operating tax, and the Treasury would no longer be obligated to transfer certain funds to the New District. Smith could not answer whether DPS would be required to transfer any residual funds to the New District.

Following the initiation of this lawsuit,[5] in lieu of answering the complaint, the Treasury moved for summary disposition under MCR 2.116(C)(8). According to the Treasury, school-operating purposes under MCL 380.1211 includes only certain expenditures, such as repayment of an emergency loan but not the repayment of all outstanding debt. Further, MCL 380.12b and MCL 380.1211, when read together, allow DPS to collect an operating tax only to pay operational expenditures, not bonds or other nonoperational debts. Accordingly, after DPS repays its emergency loan, the Revised School Code would no longer prevent the New District from levying

---

[4] A portion of the tax was rolled back because of the Headlee Amendment, but in 2024, voters approved restoring the rolled-back portion.

[5] In their complaint, the School Districts sought a declaratory judgment to the effect that DPS "is required to continue levying an operating tax pursuant to MCL 380.12b(3) after it repays the Emergency Loan and until all of [DPS's] outstanding debt is repaid," and "for as long as [DPS] levies an operating tax pursuant to MCL 380.12b(3) . . . [the Treasury] shall continue to pay no less than the full per pupil foundation allowance[.]"

an operating tax. As a result, the State would no longer be required to provide the New District with the full per-pupil allowance.

In other words, the Treasury argued that DPS could not use the operating tax to pay revolving-fund debt or bond debt, which the Treasury characterized as capital debts. The Treasury explained that the distinction between operating expenses and capital debts was that operating expenses are ongoing costs incurred for day-to-day operations, while capital debts are investments in long-term assets, such as upgrades to buildings, machinery, and vehicles. The Treasury asserted that school districts are obligated to levy a separate millage for capital debts.

In response, the School Districts moved for summary disposition under MCR 2.116(C)(10). The School Districts asserted that MCL 380.12b(3)(b) requires DPS to levy an operating tax until it has repaid all of its outstanding debt, which includes not only the emergency loan but the revolving-fund debt and bond debt as well. The School Districts added that other statutes within the Revised School Code, such as MCL 380.1215(1), suggest that operating-tax revenues within a school district's general fund must be available to repay its remaining outstanding debt.

The trial court granted summary disposition to the Treasury and denied summary disposition to the School Districts under MCR 2.116(C)(10). The trial court agreed with the School Districts that MCL 380.12b broadly defines "debt" as any monetary obligation of the qualifying school district, which indicates that DPS was intended to continue to exist to repay all of its debt, including the emergency loan, revolving-fund debt, and bond debt. However, the trial court explained that it is required to read MCL 380.12b together with MCL 380.1211, which defines "school operating purposes." The trial court determined that, considering the definition of "school operating purposes" in MCL 380.1211, school-operating purposes did not include revolving-fund debt or bond debt. The trial court observed that the Revised School Code provides for other millages and funding for the revolving-fund debt and bond debt. For instance, the bond debt was qualified bond debt under the School Bond Qualification, Approval, and Loan Act (SBQALA), MCL 388.1921 *et seq*., which authorizes a levy of up to 13 mills under MCL 388.1923(a). DPS borrowed any shortfall from a revolving-loan fund. The trial court asserted that there was no evidence of legislative intent to treat revolving-fund loans as emergency loans. Finally, the trial court reasoned that while it might have been wise policy for the Legislature to authorize DPS to use operating taxes to repay all outstanding debt, including the revolving-loan fund, outstanding bonds, or other debts, the court could not read such a provision into the statute.

The School Districts now appeal.[6]

## II. STANDARD OF REVIEW

---

[6] After oral argument in this case, we directed the parties "to file supplemental briefs regarding the content of the November 2024 ballot measure to renew the operating tax for [DPS]." *Detroit Pub Sch Community Dist v Dep't of Treasury*, unpublished order of the Court of Appeals, entered May 7, 2026 (Docket No. 379565). We have reviewed those briefs, as well as the respective reply briefs filed by the parties, when deciding this case.

This Court reviews de novo issues of statutory interpretation and whether a lower court properly granted summary disposition. *Milne v Robinson*, 513 Mich 1, 7; 6 NW3d 40 (2024). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. (internal citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## III. DISCUSSION

### A. BACKGROUND LAW

Before June 21, 2016, school districts included only general-powers school districts and first-class school districts. See MCL 380.6(1), as amended by 2009 PA 205. Effective June 21, 2016, the Legislature amended the definition of "school district" to include general-powers school districts, first-class school districts, and community districts. See MCL 380.6(1), as amended by 2016 PA 192.

Also effective June 21, 2016, "if a school district is or becomes a qualifying school district, the school district shall lose its organization and be dissolved as provided in this section." MCL 380.12b(1). A qualifying school district is a school district that previously was operated as a first-class school district and has fewer than 100,000 pupils. MCL 380.5(9). When a school district becomes a qualifying school district, a community school district is created for the same geographical area. MCL 380.383. All of the qualifying school district's assets are transferred to the community school district, but the qualifying school district continues to exist as a separate entity that generally retains the school district's debts and tax proceeds:

> If a school district loses its organization under [MCL 380.12b(1)], except as otherwise provided in this section, all records, funds, and property of the qualifying school district are transferred on the transfer date to a community district created with the same geographic boundaries of the qualifying school district under [MCL 380.381 *et seq*]. Except as otherwise provided in this section, proceeds from bonds, notes, or emergency loans, taxes levied by or payable to the qualifying school district, money payable to the qualifying school district under the state school aid act of 1979, and advances or other payments relating to any of these, and all of the qualifying school district functions described under [MCL 380.12b(3)], shall be retained by the qualifying school district and are not transferred to the community district. . . . *If a qualifying school district has outstanding debt on the transfer date, the qualifying school district shall retain a limited separate identity as a school district and the territory of the qualifying school district shall continue as a separate taxing unit only for the limited public purposes of the repayment of the debt until the debt is retired*, satisfying liability from legal claims filed before the transfer date, and protecting the credit of this state and of its school districts. [MCL 380.12b(2) (emphasis added).]

-5-

MCL 380.12b incorporates the definition of "debt" in the Revised Municipal Finance Act, MCL 141.2101 *et seq*. MCL 380.12b(15)(a). The Revised Municipal Finance Act broadly defines "debt" to include, among other things, all borrowed money, loans, and other indebtedness evidenced by bonds:

> "Debt" means all borrowed money, loans, and other indebtedness, including principal and interest, evidenced by bonds, obligations, refunding obligations, notes, contracts, securities, refunding securities, municipal securities, or certificates of indebtedness that are lawfully issued or assumed, in whole or in part, by a municipality, or will be evidenced by a judgment or decree against the municipality. [MCL 141.2103(c).]

Under MCL 380.12b(3), the transition manager of the qualifying school district has responsibility for repaying the debt of, and dissolving, the qualifying school district:

> [T]he transition manager . . . shall perform the functions and satisfy the responsibilities of the school board and superintendent of schools of the qualifying school district relating to the repayment of debt and the dissolution of the qualifying school district, including, but not limited to, all of the following:
>
> (a) Certifying and levying taxes for satisfaction of the debt in the name of the qualifying school district.
>
> (b) Doing all other things relative to the repayment of outstanding debt of the qualifying school district required by law and by the terms of the debt, including, but not limited to, filing draw requests and borrowing from the revolving loan fund for debt service on qualified bonds under the school bond qualification, approval, and loan act, 2005 PA 92, MCL 388.1921 to 388.1939, *levying or seeking voter approval for a renewal of a school operating tax under [MCL 380.1211]*, or refunding or refinancing debt.
>
> (c) Doing all other things relative to the dissolution of the qualifying school district. [Emphasis added.]

With regard to the operating tax under MCL 380.1211, subject to exceptions, a school district may levy not more than 18 mills "for school operating purposes." MCL 380.1211(1). "School operating purposes" include, but are not limited to, the repayment of emergency loans:

> "School operating purposes" includes expenditures for furniture and equipment, for alterations necessary to maintain school facilities in a safe and sanitary condition, for funding the cost of energy conservation improvements in school facilities, for deficiencies in operating expenses for the preceding year or preceding years, including, but not limited to, repayment of an emergency loan under the emergency municipal loan act, 1980 PA 243, MCL 141.931 to 141.942 . . . . [MCL 380.1211(10)(j).]

"School operating purposes" expressly do not include operating a community college, MCL 380.1211(10)(j)(*i*); creating a sinking fund, MCL 380.1211(10)(j)(*ii*); eliminating operating

deficits, MCL 380.1211(10)(j)(*iii*); operating a library, MCL 380.1211(10)(j)(*iv*); paying taxes to a public library commission, MCL 380.1211(10)(j)(*v*); or operating a community swimming pool, MCL 380.1211(10)(j)(*vi*).

In addition to having the responsibility to retire debt, see MCL 380.12b(2) and (3), the qualifying school district also has the responsibility to "[n]otify the state treasurer upon the repayment of all outstanding operating obligations of the qualifying school district," MCL 380.12b(10)(e), and, separately, to "[n]otify the state treasurer upon the repayment of all outstanding debt of the qualifying school district," MCL 380.12b(10)(f). MCL 380.12b defines "operating obligations" as debt incurred from the operation of the school district, which includes debt incurred from fiscal-stability bonds and emergency loans but, except as specified, not debt incurred to construct, maintain, or improve school facilities:

> "Operating obligation" means debt of a school district incurred for purposes of financing the operation of a school district or public schools operated by a school district, including, but not limited to, fiscal stability bonds under [MCL 380.1356] and an emergency loan under the emergency municipal loan act, 1980 PA 243, MCL 141.931 to 141.942, and transitional operating costs as defined in section 3 of the emergency municipal loan act, 1980 PA 243, MCL 141.933. Operating obligation does not include debt of a school district incurred for the purpose of constructing, renovating, maintaining, or otherwise improving school facilities unless the debt is incurred as transitional operating costs as defined in section 3 of the emergency municipal loan act, 1980 PA 243, MCL 141.933. [MCL 380.12b(15)(b).]

After the state treasurer has verified that "all outstanding operating obligations of the qualifying school district have been repaid," the state treasurer must certify that fact to the corresponding community district. MCL 380.12b(12). As a separate obligation, after the state treasurer has verified that "all of the outstanding debt of the qualifying school district has been repaid," the state treasurer must certify that fact to the corresponding community district as well. MCL 380.12b(13). Once the state treasurer certifies that latter fact, "the qualifying school district is fully dissolved and any remaining assets of the qualifying school district are transferred to the community district." MCL 380.12b(14).

## B. ANALYSIS

Turning to the instant case, the School Districts argue that under MCL 380.12b(3)(b), DPS is required to levy an operating tax until it has repaid all of its outstanding debt. According to the School Districts, because MCL 380.12b(3)(b) provides that DPS, through the transition manager, "shall . . . [do] all other things relative to the repayment of outstanding debt of the qualifying school district required by law and by the terms of the debt, including, but not limited to . . . levying or seeking voter approval for a renewal of a school operating tax under [MCL 380.1211]," it follows

that DPS must levy an operating tax under MCL 380.1211 until all of its outstanding debt is repaid. We disagree.[7]

MCL 380.12b(3)(b) provides that a qualifying school district such as DPS must repay outstanding debt in accordance with the "law and . . . the terms of the debt," which includes, in relevant part, "levying or seeking voter approval for a renewal of a school operating tax under [MCL 380.1211]." In other words, MCL 380.1211, which concerns the operating tax, is one of the laws with which DPS must comply to repay its outstanding debt under MCL 380.12b(3)(b). But MCL 380.12b(3)(b) provides that DPS—or, more specifically, the transition manager—has the responsibility to act in accordance with the laws, and the terms of the debt, to repay its outstanding debt. However, MCL 380.12b(3)(b) does not expand the statutory powers of DPS to impose an operating tax under MCL 380.1211 beyond the terms set by MCL 380.1211 itself.[8]

In this regard, we agree with the trial court and the Treasury that MCL 380.1211 limits imposition of the operating tax to "school operating purposes," see MCL 380.1211(1),[9] and that "school operating purposes" under MCL 380.1211 includes repayment of emergency loans but not repayment of revolving-fund debt and bond debt, see MCL 380.1211(10)(j). Once again, MCL 380.1211(10)(j) provides:

> "School operating purposes" includes expenditures for furniture and equipment, for alterations necessary to maintain school facilities in a safe and sanitary condition, for funding the cost of energy conservation improvements in school facilities, for deficiencies in operating expenses for the preceding year or preceding years, including, but not limited to, repayment of an emergency loan . . . and for paying the operating allowance due from the school district to a joint high school district in which the school district is a participating school district . . . .

Considered in context, the term "school operating purposes" generally is limited to those day-to-day expenses necessary for the operation and maintenance of schools themselves, such as

---

[7] However, we agree with the School Districts that the statutory definition of the word "debt," as found throughout MCL 380.12b, is sufficiently broad to encompass all of its outstanding financial obligations at issue in this case, including the emergency loan, revolving-fund debt, and bond debt. See MCL 380.12b(15)(a) and MCL 141.2103(c). The Treasury does not dispute this point.

[8] Nor do we see any such substantive expansion of DPS's statutory powers in MCL 380.12b(3)(b)'s opening language, which provides that DPS has the responsibility for "*[d]oing all other things* relevant to the repayment of outstanding debt . . . ." (Emphasis added.) As the immediately ensuing language in that statutory provision makes clear, the "all other things" being referenced are those "required by law and by the terms of the debt." At most, the breadth of this opening language may recognize and reflect that DPS has the power to perform certain administrative tasks in pursuit of its otherwise-enumerated statutory powers. It does not, however, purport to substantively expand DPS's powers.

[9] On appeal, the School Districts acknowledge that "[MCL 380.1211] provides that a school district may levy an operating tax of up to 18 mills 'for school operating purposes.' MCL 380.1211(1)."

furniture and textbook purchases, teacher salaries, water-fountain installations, and so forth, including the debt required to pay for those necessary expenses. In other words, the scope of the term "school operating purposes" generally is defined by the non-exhaustive statutory examples of "furniture and equipment," "alterations necessary to maintain school facilities in a safe and sanitary condition," "energy conservation improvements," and "deficiencies in operating expenses." See *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 318; 645 NW2d 34 (2002) (explaining that "the doctrine of *noscitur a sociis* requires that the term . . . be viewed in light of the words surrounding it"). "School operating expenses" is not an all-encompassing term that includes any school-related expenditure; otherwise, the specifically enumerated examples would be unnecessary. See *id*. Thus, for example, we have explained that "[e]xpenditures for site acquisitions and building construction are not authorized" as expenditures for "school operating purposes." *Kent Co Ed Ass'n v Wyoming Bd of Ed*, 145 Mich App 452, 455; 378 NW2d 778 (1985) (discussing MCL 380.1211, as enacted by 1982 PA 431).

As a result, because MCL 380.1211 only authorizes a school district to levy a tax for "school operating purposes," MCL 380.1211(1), and because the term "school operating purposes" generally is defined in scope by MCL 380.1211(10)(j), we must then determine whether and to what extent, if at all, financial obligations for the emergency loan, revolving-fund debt, and bond debt are included within this scope, i.e., those day-to-day expenses necessary for the operation and maintenance of schools themselves, including deficiencies in that regard.

On this point, MCL 380.1211(10)(j) provides that "deficiencies in operating expenses" is "including, but not limited to, repayment of an emergency loan." Thus, it is clear that repayment of the emergency loan is a "deficienc[y] in operating expenses" and therefore a "school operating purpose[]" for which the tax contemplated by MCL 380.1211 may be levied. However, despite the expansive language "not limited to," repayment of revolving-fund debt and bond debt are not such operating expenses or operating purposes. This is because the expansive language "not limited to" is itself limited by the preceding language "deficiencies in operating expenses." In other words, any repayment for "deficiencies in operating expenses," whether that repayment is for an emergency loan or any other type of financial obligation incurred for "deficiencies in operating expenses," constitutes a "school operating purpose" under MCL 380.1211. But in all respects, the repayment must be "for deficiencies in operating expenses for the preceding year or preceding years." MCL 380.1211(10)(j).

We are persuaded that the bond debt and the revolving-fund debt involved in this matter are not contemplated by the Legislature as "deficiencies in operating expenses for the preceding year or preceding years." *Id*. The SBQALA authorizes DPS to levy a tax of "not less than 7 mills and not more than 13 mills" to repay the bond debt and revolving-fund debt. See MCL 388.1923(a) and MCL 388.1929(1). Thus, revenues for repaying the bond debt and the revolving-fund debt are expressly authorized by other statutes, which suggests that the revenue authorized by MCL 380.1211, i.e., the operating tax, is not available for this purpose.[10] Moreover, MCL 380.12b(3)(b)

---

[10] Our opinion should not be understood as necessarily prohibiting a school district in this state from using revenue from the operating tax to repay outstanding bonds. Rather, our opinion is

provides that DPS has the authority to "fil[e] draw requests and borrow[] from the revolving loan fund for debt service on qualified bonds under the school bond qualification, approval, and loan act, 2005 PA 92, MCL 388.1921 to 388.1939 . . . ." Therefore, MCL 380.12b(3) specifically addresses the SBQALA and contemplates how school districts such as DPS may use the revolving-loan fund to repay bond debt. Notably absent is any express reference, or even implication, that the operating tax under MCL 380.1211 may be used to do so.

Simply put, despite the apparent complexities of the statutes before us, the only question that we must decide is whether DPS is authorized to levy a tax under MCL 380.12b(3)(b) and MCL 380.1211 for "school operating purposes," where the proceeds of that tax necessarily will be used to repay the revolving-fund debt and bond debt at issue here. For the reasons herein explained, we conclude that DPS is not so authorized because MCL 380.1211(10)(j) limits the levy of that tax for certain circumstances that do not include that revolving-fund debt and bond debt.[11]

The School Districts argue that such a conclusion will have a dramatic effect on the operation of school districts across the state. According to the School Districts, operating taxes are deposited into the general fund, see MCL 380.1215(1), and the general fund typically is contractually pledged as security for bonds. Thus, the School Districts reason, affirming the trial court would extinguish the ability of a school district to use its operating-tax revenue in its general fund to repay those bonds, contrary to both contract and statute. See MCL 380.1351(4) ("Bonds or notes issued by a school district or intermediate school district under this part . . . shall be full faith and credit tax limited obligations of the district pledging the general funds, voted and allocated tax levies, or any other money available for such a purpose . . . ."). We disagree. The issue before us is whether DPS has the authority to levy a millage under MCL 380.12b and MCL 380.1211 after it repays the emergency loan and has no remaining "school operating purposes," as the actual operation of the school district resides with the New District, not DPS. Our decision does not affect a typical school district's statutory and contractual obligation to pledge revenues

---

limited to circumstances involving a qualified school district that is in the process of being dissolved under MCL 380.12b.

[11] While not necessary for our decision, we note that MCL 380.12b(12) and (13) suggest that the operating expenses of a qualifying school district are something less than its entire debt. That is, MCL 380.12b(12) requires the state treasurer to certify that "outstanding operating obligations" have been repaid, while MCL 380.12b(13) separately requires the state treasurer to certify that "all outstanding debt" has been repaid. We cannot readily discern any reason for having two separate subsections in this regard unless an "*operating* obligation" may be less than the entire "debt." Indeed, MCL 380.12b(15)(b) specifically provides that "[o]perating obligation does not include debt of a school district incurred for the purpose of constructing, renovating, maintaining, or otherwise improving school facilities unless the debt is incurred as transitional operating costs as defined in . . . MCL 141.933." Thus, it must be the case that a qualifying school district can repay all of its operating obligations while still having outstanding debt. These apparently are the circumstances before us once DPS repays the emergency loan.

-10-

from certain sources in its general fund in the event that it is unable to repay its financial obligations in the usual course of events.  See footnote 10, *supra*.

## IV.  CONCLUSION

The trial court correctly concluded that DPS cannot continue to levy the operating tax under MCL 380.12b and MCL 380.1211 once DPS repays its emergency loan.  Therefore, the Treasury was entitled to summary disposition under MCR 2.116(C)(10), and we affirm.

/s/ Michael J. Riordan
/s/ Daniel S. Korobkin
/s/ Philip P. Mariani